UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:16-cr-00154-T-23AAS

CRISTIAN IBARGUEN-RIASCO
_____/

**SENTENCING MEMORANDUM AND MOTION FOR
DOWNWARD DEPARTURE**

Defendant Cristian Ibarguen-Riasco, by and through undersigned counsel, pursuant to 18 U.S.C. §§ 3553 and 3661; U.S.S.G. §§ 3B1.2 and 5K2.0; and Rule 32(i) of the Federal Rules of Criminal Procedure, hereby moves this Honorable Court to depart downward from the applicable advisory Sentencing Guidelines range and, in addition, presents the following relevant information for the Court to consider in determining a reasonable sentence to impose in this case:

**Facts and Sentencing Considerations**

Mr. Ibarguen pled guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine while onboard a vessel subject to United States jurisdiction. Mr. Ibarguen was present, along with three other crewmembers, on a small vessel that was transporting cocaine when it was interdicted by the Coast Guard in international waters. Mr. Ibarguen was a simple crewperson on the boat. Mr. Ibarguen, who was 28 years-old at the time, had lived his life in a remote area

of Colombia, and had had no formal education of any kind.  He possessed no special skills and served no specific function on the boat.

After the interdiction, Mr. Ibarguen immediately took responsibility for his actions.  He, thereafter, sought to provide substantial assistance to the investigating authorities and cooperated in the Government's prosecution.   As soon as he was able to do so, he notified the Government of his intent to plead guilty.  Since that time, he has continued to make himself available to the Government

Mr. Ibarguen's advisory Guidelines range, as calculated by Probation, falls at total offense level 33 and criminal history category I.  At that range, the Guidelines suggest a sentence of 135 to 168 months.  Mr. Ibarguen will ask this Court to depart downward from the advisory Guidelines range based on his diminished role in the offense.  He will further establish that a downward variance sentence below the advisory Guidelines range would be a sentence that is more than sufficient to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

### I. Motion for Downward Departure Based on Mr. Ibarguen-Riasco's Diminished Role in the Offense

The facts and circumstances of this case clearly indicate that Mr. Ibarguen was a minimal or, at most, a minor participant in the relevant conduct at issue in this case. Mr. Ibarguen was a simple mariner who performed no special function in the conspiracy, had no equity interest in the cocaine, and had no role in the supply or

distribution chains. Based on the role he performed, Mr. Ibarguen moves this Court to apply the USSG § 3B1.2(a) minimal role or the 3B1.2(b) minor role downward adjustment in calculating his Guidelines range.

## Applicable Law

The standard for assessing the applicability of a role based downward adjustment is the two-prong test promulgated in *United States v. De Varon*, 175 F.3d 930 (11th Cir. 1999) (en banc). The first prong of *De Varon* calls for an analysis of the defendant's role in the crime in comparison to the relevant conduct for which she is held accountable under the Guidelines. *Id.* at 940-44. In devising this first prong, the Eleventh Circuit reasoned:

> [G]iven the relatively broad definition of relevant conduct under § 1B1.3, some defendants may be held accountable for conduct that is much broader than their specific acts. A conspiracy conviction is the classic example of this phenomenon. In such cases, a defendant's relevant conduct may be coextensive with the entire conspiracy even though her role in that conspiracy was relatively minor. Under these circumstances, a district court may adjust the defendant's sentence for her mitigating role in this broad conspiracy. This adjustment allows a district court to *impose a sentence that more closely mirrors the defendant's actual conduct, furthering the goals of imposing comparable sentences for similar acts*.

*Id.* at 941 (emphasis added). Accordingly, in the test's second stage, the defendant's role in the relevant conduct for which she is being sentenced is balanced against the role of other participants in that relevant conduct. *Id.* at 944-45. Specific factors relevant to the balancing determination include the amount and value of the drugs

attributed to the conspiracy, the defendant's role in planning the conspiracy or in distributing the drugs, the defendant's equity interest in the drugs, and the amount of money the defendant stood to earn had the operation been successful. *Id.* at 945.

In addition to the *De Varon* test, the Sentencing Guidelines provide a definition for both minor and minimal participants. The Guidelines assert that the minor role is available to those not otherwise eligible for a minimal role adjustment, but whom are still "less culpable than most other participants." U.S.S.G. § 3B1.2 cmt., n. 5. In contrast, the minimal role is applicable to those individuals "who are plainly among the least culpable of those involved in the conduct of a group… the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2 cmt., n. 4.

In November 2015, after conducting a nationwide study into the district-by-district application of the mitigating role downward adjustment, the Sentencing Commission inserted into section 3B1.2's commentary specific factors for courts to consider in determining if the mitigating role adjustment is appropriate in a specific case:

> (**C**) **Fact-Based Determination.--**The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case. In determining

whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

**(i)** the degree to which the defendant understood the scope and structure of the criminal activity;
**(ii)** the degree to which the defendant participated in planning or organizing the criminal activity;
**(iii)** the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
**(iv)** the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
**(v)** the degree to which the defendant stood to benefit from the criminal activity.

USSG 3B1.2 cmt, n. 3. The amended note goes on to provide, "[f]or example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." *Id.* It then advises, "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity." *Id.*

When providing its reasons for the amendment, the Sentencing Commission stated that it had conducted "a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony." USSG § 3B1.2, Hist. Notes – 2015 Amend. In conducting that review, the Commission "found that mitigating role is applied inconsistently and more sparingly than the Commission

intended." *Id.* Specifically, the Commission found that "[i]n drug cases, ... that mitigating role is applied inconsistently to drug defendants who performed similar low-level functions (and that rates of application vary widely from district to district)." *Id.* In light of those conclusions, the Commission made the changes set forth in the 2015 amendment to 3B1.2, most notably, by adding the factors for consideration set forth above.

Analysis

A consideration of both the *De Varon* factors and the factors set forth in the newly amendment Guideline notes demonstrate that Mr. Ibarguen is a prime example of a defendant who acted in a mitigating role as contemplated under section 3B1.2. Mr. Ibarguen had no knowledge of the intricacies of this conspiracy, had no role in planning the offense or in distributing the drugs, and had no equity interest in any of the drugs that were being transported. He certainly had no decision-making authority and had no control over the operation. He, likewise, performed no special, or even defined, role in the relevant conduct. Given his young age and lack of education or worldly experience, Mr. Ibarguen would not even have had the means to perform any special function within the conspiracy. Mr. Ibarguen was merely an able body who was on hand to perform remedial tasks during the transportation of the drugs. As such, Mr. Ibarguen squarely fits within the example provided for in the 2015 amendment to section 3B1.2 as a participant "who does not have a

proprietary interest in the criminal activity and who is simply being paid to perform certain tasks." USSG 3B1.1 cmt, n. 3. Furthermore, in comparison to the roles of the other individuals involved in the relevant conduct, he was clearly the least culpable. Therefore, based on the Guidelines commentary and the corresponding factors delineated in *De Varon*, Mr. Ibarguen respectfully requests that this Court decrease his total offense level by two or four levels to adequately reflect his status as a minor or minimal participant in the conspiracy.

## II. Overall Sentencing Considerations and the 18 U.S.C. § 3553(a) Factors

The facts and circumstances surrounding this case do not call for the imposition of a sentence as great as the Guidelines would suggest. The advisory Guidelines range, no matter how it is calculated, will call for the imposition of a substantial prison sentence in this case. The Guidelines, however, "as a matter of administration and to secure nationwide consistency[,]… should be the starting point and the initial benchmark," but are not the only consideration in sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). After properly calculating the Guidelines range, the district court must then make an individualized assessment of the case and consider each of the factors set forth in 18 U.S.C. § 3553(a) before deciding upon a sentence. *Id.* at 49-51. Those factors include:

(1) the nature and circumstances of the offense;
(2) the history and characteristics of the defendant;

> (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
> (4) the need to protect the public; and
> (5) the Guidelines range, as well as
> (6) the kinds of sentences available;
> (7) the need to avoid sentencing disparities among similar defendants who have been found guilty; and
> (8) the need to provide restitution to victims of the offense.

*United States v. Martin*, 455 F.3d 1227, 1236 (11th Cir. 2006) (citations omitted). A consideration of the various 3553(a) factors applicable in the instant case establish that a sentence within the applicable proposed Guidelines range would be a punishment greater than necessary to accomplish the purposes of sentencing set forth in section 3553(a).

Mr. Ibarguen grew up in extreme poverty and has had no formal education whatsoever. He began working manual labor jobs with his father as soon as he was old enough to physically do so. He had a very close relationship with his father throughout his childhood.

In the area where he was raised, Mr. Ibarguen was frequently exposed to violence. When he was 15 years-old, Mr. Ibarguen and his father were attacked by paramilitary guerillas. The guerillas murdered Mr. Ibarguen's father right in front of Mr. Ibarguen. They also shot Mr. Ibarguen and left him for dead in a remote area. Mr. Ibarguen fortunately survived, though the death of his father has taken a heavy mental toll on him. Moreover, from that day on, Mr. Ibarguen was left to care for

and to provide for his mother and siblings. For the past two years, he has likewise provided for his young daughter and his fiancé.

Mr. Ibarguen's decision to participate in this offense was motivated by his abject poverty and his need to provide for his family. While he knew his actions were wrong, he believed that his participation in the go-fast trip could alleviate many of his family's problems. Given his age and his life history, Mr. Ibarguen is in an excellent position to better himself while in the Bureau of Prisons. The few months he has spent incarcerated since his arrest have opened his eyes to the see the errors in his ways and the possibilities that could exist for him. Mr. Ibarguen is now eager to learn to read and write in English and Spanish and to hopefully learn trades that can help him to find gainful employment in Colombia upon his return. Under the circumstances, the imposition of a sentence below the advisory Guidelines range would be sufficient, but not greater than necessary, to reflect the factors to be considered at sentencing pursuant to 18 U.S.C. § 3553.

## CONCLUSION

Based on the foregoing, Mr. Ibarguen-Riasco respectfully requests that this Honorable Court depart downward from the proposed advisory Guidelines range based on the reasons set forth above and that it, likewise, consider the unique facts and circumstances of this case and impose a downward variance sentence below the adjusted Guidelines range.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 25, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                              *s/ J. Jervis Wise*
                              J. JERVIS WISE, ESQ.
                              BRUNVAND WISE, P.A.
                              615 Turner Street
                              Clearwater, FL 33756
                              Telephone: 727-446-7505
                              Facsimile: 727-446-8147
                              E-Mail: jervis@acquitter.com
                              Florida Bar # 0019181
                              CJA Counsel for Defendant